No. 81–6773. KIME ET AL. *v.* UNITED STATES. C. A. 4th Cir. Certiorari denied. 

JUSTICE BRENNAN, dissenting.

On March 27, 1980, petitioners, Teresa Kime and Donald Bonwell, participated in a peaceful political protest on a public sidewalk in front of the Federal Building in Greensboro, N. C. The stated purposes of the demonstration were to call attention to a planned May Day demonstration and to protest the prosecution of a leader of the political party to which petitioners belonged. During the demonstration, petitioners set fire to a privately owned United States flag.

The United States Attorney filed an information in the United States District Court for the Middle District of North Carolina, charging petitioners with casting contempt on a United States flag by publicly burning it, in violation of 18 U. S. C. § 700. That statute prohibits *"knowingly cast[ing] contempt upon any flag of the United States* by publicly mutilating, defacing, defiling, burning, or trampling upon it"* (emphasis added).

Petitioners filed motions to dismiss the information on the ground that § 700 is unconstitutional on its face and as applied to them. The motions were denied after an evidentiary hearing. Petitioners were tried by jury before a United States Magistrate. They were convicted and sentenced to eight months' imprisonment each. The District Court affirmed the convictions in an unpublished opinion, and the Court of Appeals for the Fourth Circuit affirmed for the reasons stated in the District Court's opinion (affirmance order reported at 673 F. 2d 1318 (1982)).

I would grant certiorari and set this case for oral argument because I feel sure the Court would be persuaded after full briefing and oral argument that petitioners' convictions violate their First Amendment rights under the principles established in *Spence* v. *Washington,* 418 U. S. 405 (1974); *Schacht* v. *United States,* 398 U. S. 58 (1970); *Street* v. *New York,* 394 U. S. 576 (1969); *United States* v. *O'Brien,* 391 U. S. 367 (1968); and *West Virginia State Board of Education* v. *Barnette,* 319 U. S. 624 (1943).

It is not seriously contested that petitioners' action in burning a flag was, at a minimum, expressive conduct "sufficiently imbued with elements of communication to fall within the scope of the First . . . Amendmen[t]," *Spence* v. *Washington,* 418 U. S., at 409. This Court has repeatedly recognized the communicative connotations of the use of flags, including the United States flag. *Id.,* at 410; *Stromberg* v. *California,* 283 U. S. 359 (1931). It is likewise clear from the context of petitioners' act that in burning a flag they were making a statement of political protest; here, as in *Spence,* "it would have been difficult for the great majority of citizens to miss the drift of [petitioners'] point." 418 U. S., at 410.[1] Indeed, the Government could hardly contend otherwise. The statute under which petitioners were convicted requires, as an element of the offense, that they "knowingly cast contempt" on the flag by burning it. See *infra,* at 954–956. Thus, if the Government were to contend that petitioners were not engaged in expressive conduct, it would be con-

---

[1] Petitioners, over their own objection, were forbidden to introduce any evidence or argument at trial as to the purposes of the March 27 demonstration or as to their intent in burning a flag. Indeed, the trial Magistrate refused even to allow petitioners to make an offer of proof for appellate purposes. The Government, however, does not contradict petitioners' statement of their own intent, nor is there any room on the present record to doubt their statements. Certainly the courts below credited petitioners with communicative intent, see n. 2, *infra.*

fessing that petitioners did not commit the crime charged.[2] Cf., *e. g.*, *Smith* v. *Goguen*, 415 U. S. 566, 588 (1974) (WHITE, J., concurring in judgment); *id.*, at 593 (REHNQUIST, J., dissenting).

Nor can there be any doubt that the subject matter of petitioners' communication is well within the core of the First Amendment's protection. Nearly four decades ago, this Court held that the First Amendment does not permit a legislature to require a person to show his respect for the flag by saluting it. *West Virginia State Board of Education* v. *Barnette*, *supra*. The same constitutional principle applies when the legislature, instead of compelling respect for the flag, forbids disrespect. As we said in *Street* v. *New York*, *supra:*

> "We have no doubt that the constitutionally guaranteed 'freedom to be intellectually . . . diverse or even contrary,' and the 'right to differ as to things that touch the

---

[2] Besides raising the First Amendment point, petitioners contend that their convictions are infirm because there was no evidence on the record that would show that, by burning the flag, they intended thereby to cast contempt on it. This alleged absence of evidence is compounded, they argue, by the trial Magistrate's refusal to allow them to testify or argue as to their purpose. The District Court, affirming the convictions, rejected this argument, stating that "the Court has difficulty imagining a situation in which someone could burn a flag as a means of doing anything other than casting contempt unless it was done inadvertently or to dispose of a soiled or worn flag." App. to Pet. for Cert. 28. Although I express no opinion on this point in the case's present posture, I suggest that petitioners' contention is not frivolous. The District Court's reasoning amounts to a virtual presumption that petitioners intended to express a contemptuous message about the flag (a crucial element of the offense) based on nothing more than the bare act of burning. Yet one can conceive of other messages that petitioners might have intended to convey. For example, petitioners point out that a person might burn a flag to vilify particular policies with which the flag is identified, rather than to cast contempt on the flag itself. Pet. for Cert. 11. Whether the jury would have accepted this explanation is unknown; petitioners' point is that they were not even allowed to make it.

heart of the existing order,' encompass the freedom to express publicly one's opinions about our flag, including those opinions which are defiant or contemptuous." 394 U. S., at 593, quoting *West Virginia State Board of Education* v. *Barnette, supra,* at 641–642.

The only difference between this case and *Street* is that petitioners here communicated their contempt for the flag through expressive conduct rather than through spoken or written words (or through both words and conduct, as in *Street*). The First Amendment standard for government regulations of expressive conduct is the now-familiar four-part test first announced in *United States* v. *O'Brien, supra,* at 377:

> "[A] government regulation [of expressive conduct] is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; *if the governmental interest is unrelated to the suppression of free expression;* and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." (Emphasis supplied.)

It is the third branch of the *O'Brien* test (here italicized) that is dispositive of this case. The Government suggests only one possible "substantial governmental interest" underlying § 700—"preservation of the flag, not as a mere chattel, but as the 'visible embodiment of the Nation.'" Brief in Opposition 4. Not surprisingly, however, the cases that the Government cites for this proposition all predate our decision in *Spence* v. *Washington, supra.*[3] In *Spence,* we expressly *rejected* this alleged governmental interest as a basis for meeting the "unrelated to expression" branch of the *O'Brien*

---

[3] *United States* v. *Crosson,* 462 F. 2d 96 (CA9), cert. denied, 409 U. S. 1064 (1972); *Joyce* v. *United States,* 147 U. S. App. D. C. 128, 454 F. 2d 971 (1971), cert. denied, 405 U. S. 969 (1972); *Hoffman* v. *United States,* 144 U. S. App. D. C. 156, 445 F. 2d 226 (1971).

test. We assumed, *arguendo*, that the State has a valid interest in protecting the integrity of the flag as a national patriotic symbol. Even if that interest exists, we held, such an interest is directly related to expression, at least where it is invoked against one who would use the flag to make a political statement. 418 U. S., at 413–414, and n. 8. There is nothing surprising about that conclusion; it follows from the nature of the alleged governmental interest at stake. The Government has no esthetic or property interest in protecting a mere aggregation of stripes and stars for its own sake; the only basis for a governmental interest (if any) in protecting the flag is precisely the fact that the flag has substantive meaning as a political symbol. Thus, assuming that there is a legitimate interest at stake, it can hardly be said to be one divorced from political expression. Hence, the one governmental interest suggested as support for this statute, and these convictions, is one clearly foreclosed by both precedent and basic First Amendment principles.

The Government attempts to distinguish *Spence* on the ground that the defendant in that case merely displayed a flag in his own window with a peace symbol superimposed, whereas petitioners "contumaciously burned [the flag] in a public place." Brief in Opposition 6, n. 5.[4] It is true that we noted the absence of physical destruction of the flag in *Spence*, 418 U. S., at 415. Yet that fact does not dispose of the key principle at stake—that any governmental interest in protecting the flag's symbolism is one that cannot pass muster under the third branch of the *O'Brien* test. So long as petitioners were engaged in expressive conduct, and so long as their conduct impaired no *non-speech-related* governmental interest, it is entirely irrelevant what specific physical medium petitioners chose for their expression. See also *Spence, supra,* at 420–421 (REHNQUIST, J., dissenting);

---

[4] The courts below were not similarly troubled at the need to distinguish *Spence*. On the contrary, they dealt with the case by ignoring it entirely. It is not cited in the opinions of the District Court or Court of Appeals.

*Cline* v. *Rockingham County Superior Court,* 502 F. 2d 789 (CA1 1974). Section 700 is neither an arson statute nor a breach-of-the-peace statute; the Government does not and cannot suggest that the statute's prohibition is directed at any interest other than enforcing respect for the flag.[5]

So far I have analyzed this case simply as one governed by *Spence.* But even if that case were somehow distinguishable (on the basis of burning or otherwise), there is an entirely independent reason why the Court, after argument, would be persuaded that § 700 is flagrantly unconstitutional on its face—indeed, a ground much stronger than anything in *Spence.* For § 700 contains an odious feature not shared by the statute in *Spence.*[6] Section 700 makes it a crime *"knowingly [to] cas[t] contempt* upon any flag of the United States by publicly . . . burning . . . it." *Thus, it is an indispensable element of the offense under § 700 that one intend to engage in political expression—and not just any political expression, but only that espousing a particular, unpopular point of view.* This is indeed a narrowly drawn statute; it is drawn so that everything it might possibly prohibit is constitutionally protected expression. This statute is thus different from one that simply outlawed *any* public burning or mutilation of the flag, regardless of the expressive intent or

---

[5] In *Spence,* we mentioned four factors important to our decision. First, the flag was privately owned; second, the defendant displayed the flag on private property, so that he committed no trespass or disorderly conduct; third, there was no evidence of breach of the peace; and fourth, the defendant was engaged in communication. 418 U. S., at 408–410. All of those factors are present here as well. Petitioners, unlike Spence, made their demonstration on public property, but in both cases there was no suggestion of trespass or disorderly conduct. Petitioners were where they had a right to be, and they were not charged with violating any regulation purporting to regulate use of public areas.

[6] The statute at issue in *Spence,* in fact, was not a flag desecration statute at all, but a so-called "improper use" statute, forbidding the superimposition of any advertising or other extraneous matter onto a flag. Wash. Rev. Code § 9.86.020; see 418 U. S., at 406–407, and n. 1.

nonintent of the actor.[7] To put it bluntly, one literally cannot violate § 700 *without* espousing unpopular political views.[8] That is the very definition of a censorship statute.

In *Schacht* v. *United States*, 398 U. S., at 62–63, this Court unanimously struck down an actor's conviction for the unauthorized wearing of a military uniform. The statute in question contained an exception to the prohibition for theatrical productions—but only those productions that did not tend to discredit the Armed Forces. We held that such a content-based exception constituted impermissible censorship.

The same principle applies in the context of selective flag desecration statutes. In his opinion concurring in the judgment in *Smith* v. *Goguen*, JUSTICE WHITE succinctly and soundly stated the reasons why such a statute is impermissible:

> "To violate the statute in this respect, it is not enough that one 'treat' the flag; he must also treat it 'contemptuously,' which, in ordinary understanding, is the expression of contempt for the flag. In the case before us, . . . the jury must have found that Goguen not only wore the flag on the seat of his pants but also that the act—and hence Goguen himself—was contemptuous of the flag.

----

[7] I do not mean to be read as suggesting that such a statute would be constitutional. On the contrary, it would be invalid for the reasons stated in my discussion of *Spence, supra.* My present point is that even if we had reached the opposite conclusion in *Spence* from the one we stated, there would be an independent fatal flaw in § 700.

[8] The Government's brief gives the game away when it argues that "'the legislation was enacted to prohibit the physical act of contemptuously burning a flag, rather than to in any way suppress free speech.'" Brief in Opposition 5, quoting *United States* v. *Crosson*, 462 F. 2d, at 102. There is no such thing as a *"physical* act of *contemptuously* burning a flag." As JUSTICE REHNQUIST said in *Smith* v. *Goguen*, 415 U. S. 566, 593 (1974) (dissenting opinion), "I have difficulty seeing how Goguen could be found by a jury to have treated the flag contemptuously by his act and still not to have expressed any idea at all."

*To convict on this basis is to convict not to protect the physical integrity or to protect against acts interfering with the proper use of the flag, but to punish for communicating ideas about the flag unacceptable to the controlling majority in the legislature.*

. . . . .

". . . It would be difficult . . . to believe that the conviction in *O'Brien* would have been sustained had the statute proscribed only contemptuous burning of draft cards." 415 U. S., at 588–590 (emphasis supplied; footnote omitted).

See also, *e. g.*, *id.*, at 591 (BLACKMUN, J., dissenting); *id.*, at 597–598 (REHNQUIST, J., dissenting); *Spence v. Washington,* 418 U. S., at 422–423 (REHNQUIST, J., dissenting).

In short, § 700 constitutes overt content-based censorship, pure and simple. Under this statute, one may freely burn, mutilate, or otherwise abuse a flag for any reason in the world, *except* for the purpose of stating a contemptuous political message about the flag and what it stands for. This censorship goes to the heart of what the First Amendment prohibits. Of course, § 700 does not bar petitioners from seeking to express their message by other means; but that is immaterial. It has long been settled that a government may not justify a content-based prohibition by showing that speakers have alternative means of expression.[9] This statute is unconstitutional on its face. I would grant certiorari because I am confident the Court after argument would reverse these convictions and uphold the vital constitutional principle forbidding government censorship of unpopular political views.

---

[9] *E. g., Consolidated Edison Co. v. Public Service Comm'n,* 447 U. S. 530, 541, n. 10 (1980), and cases cited.