SARIS, United States District Judge,
concurring and dissenting.
I concur with the majority opinion regarding the application of Lawrence to the “Don’t Ask, Don’t Tell” statute, 10 U.S.C. § 654 (the “Act”). I also concur with the majority’s discussion of the plaintiffs’ equal protection challenge. However, I respectfully dissent from the discussion of the plaintiffs’ claim that 10 U.S.C. § 654(b)(2)[14] violates the First Amendment.
*66 The military calls the evidentiary presumption created by 10 U.S.C. § 654(b)(2) a “rebuttable” presumption. See Department of Defense (“DoD”) Directive No. 1332.14 ¶ E3.A1.1.8.1.2.2 (amended 1994) (“A statement by a Service member that he or she is a homosexual or bisexual, or words to that effect, creates a rebuttable presumption that the Service member engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts”) (emphasis added). Because the plaintiffs dispute that the presumption is rebuttable, I adopt the phrasing used by the Second Circuit, and call the presumption the “statement presumption.” See Able v. United States, 88 F.3d 1280, 1283 (2d Cir.1996).
1. The Claims
Plaintiffs argue that the statement presumption violates the First Amendment in two ways. First, they contend that the presumption is a dead letter in practice because, as applied, “it is functionally impossible for a gay service member to say T am gay’ and then prove that he has no ‘propensity1 to engage in homosexual activity, even if the service member could show a track record of celibacy and an honest intent to refrain from prohibited conduct.” In the plaintiffs’ view, the only way to avoid discharge is to recant their sexual orientation. As such, the statement presumption is allegedly used to punish plaintiffs’ speech concerning their own status as homosexuals.
Second, the plaintiffs argue that the statement presumption is an unconstitutional allocation of the burden of proof, which chills their own speech as well as a whole range of protected expression by both gay and straight service members. The plaintiffs argue that:
The provision’s burden falls on any speaker whose “[ljanguage or behavior” suggests to “a reasonable person” that the person “intended to convey” that he or she is gay. This broad definition could chill a whole range of protected expression: A service member might wave a rainbow flag or wear a pink triangle, or he might state that he opposes “Don’t Ask, Don’t Tell.” Under § 654’s burden-shifting mechanism, these possibilities and more could force the service member — whether straight or gay — into discharge proceedings where he must prove that he has no propensity to engage in homosexual conduct.
(internal citations omitted).
2. Content Neutrality
The starting point for the analysis is the difficult question of whether the statement presumption restricts speech based on its content or viewpoint. I ultimately agree with the majority’s position that the statement presumption is content-neutral, but I believe that the issue is a much closer call.
“The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid.” R.AV. v. City of St. Paul, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (citations omitted). A content-based restriction “can stand only if it satisfies strict scrutiny,” and thus *67 is only constitutional if it is “narrowly tailored to promote a compelling Government interest.” United States v. Playboy Entm’t Group, Inc., 529 U.S. 803, 813, 120 S.Ct. 1878,146 L.Ed.2d 865 (2000).
However, “[a] restriction that on its face appears to be content-based, yet serves another purpose that by itself is not speech restrictive, may be constitutionally permitted.” Able, 88 F.3d at 1294. Where a restriction does not “fit neatly into either the ‘content-based’ or ‘content-neutral’ category,” the Supreme Court has held that the speech restriction is content-neutral so long as it is “justified without reference to the content of the regulated speech.” City of Renton v. Playtime The-atres, Inc., 475 U.S. 41, 47-48, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (finding zoning ordinance that limits placement of adult theaters content-neutral because it was “aimed not at the content of the films shown ... but rather at the secondary effects of such theaters on the surrounding community”) (emphasis in original).
Even a content-neutral statute, though, must pass First Amendment muster. A content-neutral regulation is permissible:
if it is within the constitutional power of the Government;
if it furthers an important or substantial governmental interest;
if the governmental interest is unrelated to the suppression of free expression; and
if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.
Wayte v. United States, 470 U.S. 598, 611, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (quoting United States v. O’Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)).
The four circuits that addressed the constitutionality of the Act soon after its passage (and before Lawrence)[15] rejected First Amendment challenges to the statement presumption, but they did not fully agree on the appropriate categorization of the First Amendment restriction. In Thomasson v. Perry, 80 F.3d 915 (4th Cir.1996) (en banc), involving a First Amendment challenge to the Act both on its face and as-applied, the Fourth Circuit rejected an argument that the statement presumption suppressed speech on the basis of its content and viewpoint, holding:
The statute does not target speech declaring homosexuality; rather it targets homosexual acts and the propensity or intent to engage in homosexual acts, and permissibly uses the speech as evidence. The use of speech as evidence in this manner does not raise a constitutional issue — “the First Amendment ... does not prohibit the evidentiary use of speech to establish the elements of a crime,” or, as is the case here, “to prove motive or intent.”
Id. at 931 (quoting Wisconsin v. Mitchell, 508 U.S. 476, 489, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993)). The Fourth Circuit pointed out that service members subject to proceedings under the statement presumption have, in the past, “successfully demonstrated that they lack a propensity or intent to engage in homosexual acts.” Id. at 932. The Fourth Circuit relied on opinions from two district courts to demonstrate that some service members had successfully rebutted the presumption of propensity. See Richenberg v. Perry, 909 F.Supp. 1303, 1313 (D.Neb.1995) (noting that seven service members have successfully rebutted the presumption but not de *68 scribing the evidence presented), aff'd, 97 F.3d 256 (8th Cir.1996); Able v. United States, 880 F.Supp. 968, 976 (E.D.N.Y.1995) (identifying three instances where Navy members had been able to escape discharge, but concluding that these instances were “obviously aberrations that cannot be taken to show that the Act holds out any realistic opportunity to rebut the presumption”), vacated, 88 F.3d 1280, 1298 (2d Cir.1996) (rejecting the district court’s characterization of these cases as “aberrations” and stating instead that “they demonstrate that the admission of homosexual status does not inevitably equate with a finding of propensity to engage in homosexual acts”).
Two circuits similarly held that the Act and its implementing DoD Directives do not target mere status or speech, but seek to identify and exclude those who are likely to engage in homosexual acts. See Richenberg v. Perry, 97 F.3d 256, 263 (8th Cir.1996) (agreeing with Thomasson); Holmes v. Cal. Army Nat’l Guard, 124 F.3d 1126, 1136 (9th Cir.1997) (holding brevis that the statement presumption does not violate the First Amendment because the service members were discharged for their conduct and not for their speech).
In a thoughtful opinion, the Second Circuit in Able v. United States, 88 F.3d 1280 (2d Cir.1996), addressed a facial challenge to the statement presumption claiming that it violated the First Amendment. Assuming, without deciding, that separation of a service member based on status alone would be unconstitutional, id. at 1297 n. 10, the Second Circuit discussed whether the statement presumption was content-neutral or content-based. Id. at 1294-96. The court never opted for one label or the other, holding instead that the statement presumption passed constitutional muster under both standards. Id. at 1295-96. The court emphasized that, under United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the plaintiffs failed to show that “no matter how the Act [was] read, it punish[ed] status not conduct.” Able, 88 F.3d at 1297. It reasoned:
Contrary to the district court, we do not believe that, in the context of a facial challenge, we may conclude that the Act equates status with propensity. To be sure, in most cases a member who admits to a homosexual orientation will eventually be separated from the armed forces. But that is because the eviden-tiary value of the admission is strongly linked to what it is used to prove: a likelihood of engaging in homosexual acts. The plaintiffs cannot prove and the district court cannot credibly maintain that there are no instances in which a person will be retained, despite admitting to a homosexual status, because there is no likelihood that he will engage in such acts. The Directives promulgated by the DoD in accordance with the Act specifically contemplate that such an event may occur. See DoD Directive No. 1332.14, end. 3, pt. 1, at H.l.b(2).
Id. at 1298.
As the Supreme Court has held, when it is not clear whether a restriction is content-based or content-neutral, the controlling consideration is the governmental purpose in enacting the legislation. Renton, 475 U.S. at 48, 106 S.Ct. 925; see also Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Here, the government insists that the purpose of the Act is to target conduct, not status, and points to DoD Directives that limit the Act to only those who engage in or are likely to engage in homosexual conduct. See DoD Directive No. 1332.14 ¶ E2.1.10 (defining “propensity to engage in homosexual acts” to mean “more than an abstract preference or desire to engage *69 in homosexual acts; it indicates a likelihood that a person engages in or will engage in homosexual acts”) (emphasis added); see also id. at ¶ E3.A1.1.8.1.2.2 (same). In response, the plaintiffs point to the plain terms of the statute, and also to a regulation that states that the statement presumption encompasses “[l]anguage or behavior that a reasonable person would believe was intended to convey the statement that a person engages in, attempts to engage in, or has a propensity to engage in homosexual acts.” Id. at ¶£2.1.16. According to plaintiffs, given the vagueness of the term “propensity,” the statement presumption can be interpreted to reach expressions of mere homosexual status.
While the question is close, I conclude that the statement presumption is better viewed as content-neutral because its primary purpose, as set forth by the government, is to target conduct, not speech. But see Thomasson, 80 F.3d at 934 (Lut-tig, J., concurring) (agreeing with plaintiff that the purpose of Congress in passing the Act was to mandate exclusion of all known homosexuals based on their orientation or status “regardless of whether they have actually engaged in homosexual conduct or are likely to engage in any such conduct”).
Thus, under the standard that applies to content-neutral restrictions on speech, the critical remaining inquiries are “(1) whether the statement ] presumption furthers a substantial governmental interest, and (2) whether the statement] presumption restricts the plaintiffs’ speech no more than is essential.” Able, 88 F.3d at 1295 (emphasis added). For the reasons stated by the majority opinion with respect to the plaintiffs’ other constitutional claims, the answer to the first of these inquiries is “yes.” Accordingly, I now turn to the question of whether the statement presumption, as applied, is overly restrictive of the plaintiffs’ speech.
3. Dead Letter
Undaunted by pre-Lawrence case law, the plaintiffs, who all admit they are homosexual within the meaning of Section 654(f)(1),[16] argue that the statement presumption burdens speech more than is essential because, as applied, it is “functionally impossible” to rebut the presumption short of recanting one’s status. As such, plaintiffs allege that the statement presumption punishes service members who speak about their constitutionally protected homosexual status by requiring their discharge.
The government disagrees with plaintiffs’ dead letter theory that the statement presumption is impossible to rebut in practice. The government points out that, although the Act broadly defines homosexual conduct to include a “propensity to engage in” homosexual conduct, 10 U.S.C. § 654(f)(1), the implementing DoD Directives narrowly interpret “propensity to engage in” homosexual conduct to mean “more than an abstract preference or desire to engage in homosexual acts; it indicates a likelihood that a person engages in or will engage in homosexual acts.” DoD Directive No. 1332.14 ¶E2.1.10 (defining “propensity”) (emphasis added); see also *70 id. at ¶ E3.A1.1.8.1.2.2 (same). Accordingly, in the government’s view, because a service member’s personal definition of “homosexuality” may not coincide with the Act’s definition, a service member may be able to successfully rebut the statement presumption if he can show that his statement “I am gay” is not indicative of a likelihood that the he will engage in proscribed homosexual conduct.
As several courts have pointed out, the line between “propensity” and “orientation” is razor-thin at best. See, e.g., Able, 880 F.Supp. at 975 (characterizing the distinction between “orientation” and “propensity” as “Orwellian”); Thomasson, 80 F.3d at 941-42 n. 8 (Luttig, J., concurring) (“I do not know what homosexual orientation is, if it is not the propensity to commit homosexual acts; indeed, I do not understand how one even knows that he has a homosexual orientation except by realizing that he has a propensity toward the commission of homosexual acts.”). Emphasizing that “propensity” sweeps in everyone who is gay, plaintiffs allege that, in practice, gay and lesbian service members are routinely discharged despite evidence that there is no likelihood that they will engage in proscribed homosexual conduct while they are in military service. Accordingly, plaintiffs contend that any honest admission of a gay or lesbian service member’s sexual orientation results in discharge.
In my view, if the Act were applied to punish statements about one’s status as a homosexual, it would constitute a content-based speech restriction subject to strict scrutiny. See Meinhold v. U.S. Dep’t of Def., 34 F.3d 1469, 1476-80 (9th Cir.1994) (in an equal protection challenge to the military’s pre-“Don’t Ask, Don’t Tell” homosexuality policy, construing the policy as only applying to conduct in order to avoid constitutional concerns that would arise if the policy punished service members for “mere propensity” or status alone) (quoting Powell v. Texas, 392 U.S. 514, 543-44, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968) (Black, J., concurring)). Indeed, as Lawrence articulates, “Liberty presumes an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct.” Lawrence v. Texas, 539 U.S. 558, 562, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003); see also Whitney v. California, 274 U.S. 357, 375, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring) (stating that the founders “believed that freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth”).
It is telling that the government does not contend it has a substantial interest, let alone a compelling one, in separating a service member because of his or her status as a homosexual. Rather, the government protests that it is not punishing homosexual status, and insists that it has an interest only in identifying and proscribing homosexual conduct to further its substantial interest in morale, good order and discipline, and unit cohesion.
As proof that the statement presumption is in fact rebuttable, the government highlights opinions, in particular Able and Holmes, that have found that the statement presumption has been successfully rebutted in the past. See Able, 88 F.3d at 1298 (“[A]s the government represented at oral argument without contradiction, in seven cases (out of forty-three attempts), service members have been able to rebut the presumption created by their admission and have been retained.”); Holmes, 124 F.3d at 1136 (pointing to several cases, including one where a “female Naval officer admitted to her homosexuality but submitted a statement, in which she stated, inter alia, that she understands the rules against homosexual conduct and intended *71 to obey those rules.”). However, in Able, the fact that some service members were successful was held to be sufficient to defeat a facial assault on the statute under the Salerno standard. See Able, 88 F.3d at 1297-98 (“Because plaintiffs have mounted a facial challenge to the Act, they must show that, no matter how the Act is read, it punishes status and not conduct.”) (citing Salerno, 481 U.S. at 745, 107 S.Ct. 2095). Here, in contrast to Able, plaintiffs mount an as-applied challenge by alleging the presumption is now functionally impossible to rebut short of recanting. Although the government points to cases of the statement presumption being successfully rebutted, the cherry-picked examples are all well over twelve years old: In fact, some 11,000 service members have been discharged under the Act since 1993. On a motion to dismiss, a court “must accept as true all the factual allegations in the complaint,” Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); accord Bell Atl. Corp. v. Twombly, — U.S.-, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (a court must assume “that all the allegations in the complaint are true (even if doubtful in fact)”), and a court must make all reasonable inferences in the plaintiffs’ favor. Clark v. Boscher, 514 F.3d 107, 112 (1st Cir.2008).
Finally, the government argues that even if the statement presumption is a dead letter in practice, any misapplication of the presumption can be cured by the availability of administrative review. It may be true that an individual service member may prevail in rebutting the presumption on administrative review short of recanting his status, by stating, for example, that he will refrain from engaging in prohibited homosexual conduct. However, the availability of an administrative remedy does not defeat a First Amendment claim that the government is systematically applying the Act in such a way that it unconstitutionally burdens protected speech. See Califano v. Sanders, 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (“Constitutional questions obviously are unsuited to resolution in administrative hearing procedures.”); see also Able, 88 F.3d at 1289 (“[B]ecause none of the administrative boards before which the plaintiffs would appear has the power to declare the Act unconstitutional, there is no realistic possibility that such proceedings would result in anything other than the plaintiffs’ discharge.”).
Accordingly, when all reasonable inferences are drawn in their favor, the plaintiffs have alleged a viable cause of action that the burden placed by the government on gay and lesbian service members’ speech is “greater than is essential” to the government’s interest in preventing the occurrence of homosexual acts in the military.
4. Chill
Plaintiffs also argue that the statement presumption is an unconstitutional allocation of the burden of proof, which chills a whole range of protected expression.[17] *72 The majority treats the plaintiffs’ chill claim as an “overbreadth” claim, although only Appellant Pietrangelo describes the claim in those terms. This designation by the majority is understandable because plaintiffs are unclear as to whether this is a facial challenge, an as-applied challenge, or both.
Because the plaintiffs have not expressly raised a facial challenge to the statement presumption, I will treat the claim as an as-applied challenge. The majority is correct to state that “[njone of the plaintiffs contend that they were separated from service because they participated in expressive activities.” Op. at 62 n. 13. However, the core of the plaintiffs’ as-applied challenge is that they were chilled from engaging in protected speech, not that they were punished for engaging in such speech.
As a preliminary matter, the government has argued that this alloeation-ofproof challenge to the statement presumption was not raised before the district court, and is therefore waived. While the plaintiffs raised a chilling argument before the district court, they did not raise this precise argument. However, in a First Amendment case, “[ojnce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.” See Lebron v. Nat’l R.R. Passenger Corp., 513 U.S. 374, 379, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995) (internal quotation marks omitted). Accordingly, in my view, in this case involving a First Amendment challenge, plaintiffs’ argument that the statement presumption violates the First Amendment because it requires service members to rebut the presumption should not be deemed waived.
The government contends that the DoD Directives and Issuances specifically carve out protected speech, quoting Directives and Issuances that show that the presumption is not triggered by rumors, suspicions, or capricious claims of others, see DoD Directive No. 1332.14 ¶ E3.A4.1.3.3, or by going to a gay or lesbian bar, possessing or reading homosexual publications, associating with gays and lesbians, or marching in a gay rights parade in civilian clothes. See id. ¶ E3.A4.1.3.3.4; see also S.Rep. No. 103-112, at 292 (1993) (“What the policy recognizes is that heterosexuals, as well as homosexuals, might march in gay rights parades, frequent a gay bar, [and] read gay literature.”).
Citing Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), the government argues that the military’s need for obedience and necessity “may render permissible within the military that which would be constitutionally impermissible outside it.” 417 U.S. at 758, 94 S.Ct. 2547 (affording deference to regulations applied to an Army doctor who protested Vietnam War and refused to obey orders on base). As the Supreme Court has held, its “review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society.” Goldman v. Weinberger, 475 U.S. 503, 507, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986). Moreover, Congress is given the “highest deference” when legislating in the realm of military affairs. Loving v. United States, 517 U.S. 748, 768, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996); see also Solo-rio v. United States, 483 U.S. 435, 447, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987) (noting that Congress has “primary responsibility for the delicate task of balancing the rights *73 of servicemen against the needs of the military”).
While judicial deference is “at its apogee” when legislative action regarding military affairs is challenged, “deference does not mean abdication.” Rostker v. Goldberg, 453 U.S. 57, 70, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981) (“None of this is to say that Congress is free to disregard the Constitution when it acts in the area of military affairs.”). The Supreme Court has struck down restrictions on speech imposed by Congress on First Amendment grounds, even when military matters were involved. See Schacht v. United States, 398 U.S. 58, 60, 62-63, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970) (striking down a statutory restriction that allowed the wearing of military uniforms by actors in civilian theatrical productions only when such productions would not “tend to discredit” the military).
The Supreme Court has afforded its strongest deference to the military for speech in military settings. See, e.g., Goldman, 475 U.S. at 507-10, 106 S.Ct. 1310 (affording deference to regulation that prevented soldiers from wearing yarmulkes while on duty and in uniform); Brown v. Glines, 444 U.S. 348, 354-55, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980) (affording deference to regulation that prevented soldiers from circulating petitions on air force bases). Even then, the deference is not absolute. In Brown v. Glines, for example, the Court held that the limitations on on-base petitions “restrict speech no more than is reasonably necessary” because it allowed for alternative channels of protest, such as through the United States mail, and the regulations “specifically prevent commanders from halting the distribution of materials that merely criticize the Government or its policies.” 444 U.S. at 355, 100 S.Ct. 609.
The most troubling aspect of the Act’s statement presumption is that it covers purely private speech, and public speech made off base and off duty. By its own terms, the Act is “pervasive” in scope, applies “24 hours [a] day,” and applies even to speech made “off base” and/or “off duty.” See 10 U.S.C. §§ 654(a)(9)-(ll). Thus, as alleged in the complaint, the Act required the discharge of some of the plaintiffs based upon strictly private speech, such as confiding in a friend or words within a letter from a friend or family member. In addition, the amicus brief submitted by the constitutional law professors cites the example of an Arizona state representative who spoke about his homosexuality on the floor of the legislature. After the military discovered the speech through an anonymous complaint and initiated discharge proceedings against the representative, he negotiated a voluntary separation from the Army. See generally Tobias Barrington Wolff, Political Representation and Accountability Under Don’t Ask, Don’t Tell, 89 Iowa L.Rev. 1633, 1644-50 (2004) (providing examples of the Act’s statement presumption being applied to conversations with family members, sessions with chaplains and psychotherapists, and certain public statements).
Plaintiffs argue that the statement presumption, as applied, chills speech because a service member will fear triggering a discharge proceeding, regardless of whether he or she could successfully rebut the presumption. As the Supreme Court explained when striking down a statement presumption in another context, “[t]he man who knows that he must bring forth proof and persuade another of the lawfulness of his conduct necessarily must steer far wider of the unlawful zone than if the State must bear these burdens.” Speiser v. Randall, 357 U.S. 513, 526, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958) (in a due process chai- *74 lenge, invalidating a statute that conditioned a veteran’s tax exemption on the signing of an oath disavowing the violent overthrow of the government and that established a rebuttable presumption against eligibility for the exemption if one failed to sign the oath); see also Smith v. California, 361 U.S. 147, 150-51, 80 S.Ct. 215, 4 L.Ed.2d 205 (1939) (explaining that “the allocation of the burden of proof,” like many other legal devices that ordinarily pass constitutional muster, “cannot be applied in settings where they have the collateral effect of inhibiting the freedom of expression, by making the individual the more reluctant to use it.”). As alleged, the Act’s statement presumption chills individual service members from discussing homosexuality both privately and publicly even when they have no intent to engage in prohibited homosexual conduct.
In conclusion, the plaintiffs’ burden is a tough one in light of the strong deference owed to Congress and the military seeking to protect unit cohesion. Yet, when all reasonable inferences are drawn in their favor, plaintiffs have made sufficient allegations that the burden that the statement presumption places on speech is greater than is essential, particularly in nonmilitary settings off base and off duty. Thus, I believe that the motion to dismiss should be denied. Because the majority holds otherwise, I respectfully dissent in this very difficult case.

. 10 U.S.C. § 654(b)(2) provides, in relevant part, that:
(b) A member of the armed forces shall be separated from the armed forces ... if one *66 or more of the following findings is made and approved ...:
(2) That the member has stated that he or she is a homosexual or bisexual, or words to that effect, unless there is a further finding, made and approved in accordance with procedures set forth in the regulations, that the member has demonstrated that he or she is not a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts.

. A recent post -Lawrence challenge to the statute did not include a First Amendment claim. See Witt v. Dep’t of the Air Force, 527 F.3d 806 (9th Cir.2008).

. As the majority correctly points out, "[e]ach plaintiff has agreed that he or she is a person who 'engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts,’ ” as defined under the Act. Yet this concession by the plaintiffs does not end the matter because the plaintiffs also argue that the Act’s definition of propensity improperly includes homosexual status. Thus, I do not understand the plaintiffs to be conceding that they could not have rebutted the statement presumption under § 654(b)(2) if, as the government maintains in defending the Act, “propensity” was limited to a likelihood of engaging in prohibited homosexual acts while a service member.

. A group of constitutional law professors submitted an amicus brief in support of this argument. The professors on the brief are Akhil Reed Amar, Southmayd Professor of Law at Yale Law School; C. Edwin Baker, Nicholas F. Gallicchio Professor of Law at the University of Pennsylvania Law School; Erwin Chemerinsky, Alston & Bird Professor of Law and Professor of Political Science at Duke Law School; Owen M. Fiss, Sterling Professor of Law at Yale Law School; Pamela 5. Karlan, Kenneth and Harle Montgomery Professor of Public Interest Law at Stanford Law School; Andrew Koppelman, John Paul Stevens Professor of Law at Northwestern Law School; Kathleen M. Sullivan, Stanley Morrison Professor of Law and Former Dean of Stanford Law School; Laurence H. Tribe, *72 Carl M. Loeb University Professor at Harvard Law School; and Tobias Barrington Wolff, Professor of Law at the University of Pennsylvania Law School.