**UNITED STATES of America, Appellee,**

v.

**William Charles CARY, Jr., Appellant.**

**No. 88–5458.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 10, 1989.
Decided Feb. 26, 1990.

Cecilia Michel, Minneapolis, Minn., for appellant.

Thorwald H. Anderson, Jr., Minneapolis, Minn., for appellee.

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

William Charles Cary, Jr. (Cary) appeals his conviction [1] of knowingly casting contempt upon a flag of the United States by publicly burning it in violation of 18 U.S.C. § 700 (1988).[2] The district

---

1. Cary's conviction followed a two-day jury trial on August 22–23, 1988.

2. 18 U.S.C. § 700 provides:
(a) Whoever knowingly casts contempt upon any flag of the United States by publicly mutilating, defacing, defiling, burning, or trampling upon it shall be. fined not more than $1,000 or imprisoned for not more than one year, or both.

(b) The term "flag of the United States" as used in this section, shall include any flag, standard, colors, ensign, or any picture or representation of either, or of any part or parts of either, made of any substance or represented on any substance, of any size evidently purporting to be either of said flag, standard, colors, or ensign of the United States of America, or a picture or a representation of either, upon which shall be shown

court,[3] which upheld § 700 against constitutional attack,[4] sentenced Cary to three months in custody and imposed a special assessment of twenty-five dollars. On appeal, Cary challenges the constitutionality of the federal statute only as applied. The issue presented on appeal is whether the Supreme Court's recent opinion in *Texas v. Johnson,* — U.S. —, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), which held the Texas flag desecration statute[5] unconstitutional as applied, mandates that we reverse Cary's conviction.[6] Because the facts of this case are distinguishable from those in *Texas v. Johnson,* we believe the federal government's interest in halting and preventing further breaches of the peace in front of its Armed Services Recruitment Center justifies Cary's conviction for flag burning. Therefore, we affirm Cary's conviction. In so doing, we also affirm, albeit

on other grounds,[7] the district court's finding that § 700 is constitutional as applied.

### I.

On March 18, 1988, several hundred demonstrators[8] gathered in uptown Minneapolis at the corner of Lake Street and Hennepin Avenue to protest the decision of the United States Government to send 3,200 troops to Honduras. Tr. at 116–17.[9] In order to protect demonstrators from motorists, the Minneapolis Police Department closed portions of the streets one block in either direction of the intersection of Lake and Hennepin with wooden barricades. Tr. at 99. Furthermore, the inspector of the Minneapolis Police Department ordered the officers to refrain from making arrests during the demonstration. Tr. at 53. Cary agrees that in providing an atmosphere where demonstrators would be safe from

the colors, the stars and the stripes, in any number of either thereof, or of any part or parts of either, by which the average person seeing the same without deliberation may believe the same to represent the flag, standards, colors, or ensign of the United States of America.

(c) Nothing in this section shall be construed as indicating an intent on the part of Congress to deprive any State, territory, possession, or the Commonwealth of Puerto Rico of jurisdiction over any offense over which it would have jurisdiction in the absence of this section.

3. The Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota.

4. Although it is clear Cary attacked the statute in the district court on its face, it is unclear whether he attacked the statute as applied. Tr. at 5–8, 90 (Aug. 22, 1988); Tr. at 5–8 (July 25, 1988). Because he now challenges the statute only as applied, we assume that he also made an as applied attack in the district court.

5. Tex.Penal Code Ann. § 42.09 (1989) provides:

(a) A person commits an offense if he intentionally or knowingly desecrates:
(1) a public monument;
(2) a place of worship or burial; or
(3) a state or national flag.

(b) For purposes of this section, "desecrate" means deface, damage, or otherwise physically mistreat in a way that the actor knows will seriously offend one or more persons likely to observe or discover his action.

(c) An offense under this section is a Class A misdemeanor.

6. Cary also alleges the district court erred in failing to instruct the jury that to convict him of violating § 700, the state must prove he had the specific intent to cast contempt upon the flag. After reviewing the record, we reject Cary's argument that the district court erred. The court instructed the jury that "[a]n act is done knowingly if it is done *voluntarily* and *intentionally* and not because of mistake or accident or other innocent reason." Tr. at 181 (Aug. 23, 1988) (emphasis added). Such an instruction was both sufficient and proper.

7. The district court appears to have upheld the constitutionality of § 700 on its face and as applied based upon a government interest in protecting the flag as a national symbol. We rely instead on the government's interest in preventing further breaches of the peace.

8. The testimony differs as to the exact number of demonstrators. Lisa Cary, Cary's sister, testified that there were "hundreds" of demonstrators. Tr. at 99 (Aug. 23, 1988). John Carter, a Minneapolis police officer, testified that there were between 100 and 120 people in the area. Tr. at 56 (Aug. 22, 1988). Because we resolve factual disputes in favor of the jury verdict, we presume there were hundreds of demonstrators. *See Street v. New York,* 394 U.S. 576, 590, 89 S.Ct. 1354, 1364, 22 L.Ed.2d 572 (1969); *United States v. Martin,* 772 F.2d 1442, 1445 (8th Cir. 1985); *United States v. Willis,* 774 F.2d 258, 260 (8th Cir.1985).

9. All references to the transcript are to the August 22–23, 1988 trial unless otherwise noted.

traffic, the police displayed a cooperative spirit. Tr. at 138.

At approximately 4:50 p.m., Lisa Cary, Cary's sister, arrived at the protest, which at that time was still located at the intersection of Hennepin and Lake. From her involvement in the demonstration until her brother burned the American flag in front of the Armed Services Recruitment Center, Lisa Cary witnessed five other flag burnings.[10] Tr. at 100–01. No arrests were made in connection with these other flag burnings. Furthermore, there is no evidence in the record that any of these five flag burnings were accompanied by violence.

During the course of the demonstration, the protesters marched ten blocks down Lake Street to the Recruitment Center. Tr. at 100, 101, 124. When Cary arrived at the Recruitment Center wearing a slit American flag as a poncho,[11] a crowd of people were still demonstrating in front of the building. There was a man speaking to the crowd through a bull horn. Tr. at 126. At that point, however, the character of the demonstration turned violent.

One unidentified individual charged the Recruitment Center and broke its front windows. Tr. at 58; Government Exhibit No. 4 (video).[12] People began yelling and leaving the scene. Tr. at 101–02, 125; Government Exhibit No. 4. Another unidentified vandal repeatedly shot roman candles into the Recruitment Center through the broken windows. Tr. at 66; Government Exhibit No. 4. Lisa Cary testified that she and several other demonstra-

tors left the scene because of the violence. Tr. at 101–02. Even Cary characterized the situation as "dangerous." Tr. at 126. He recognized that the violence was destructive and engaged in for "fun." Id.[13]

Upon hearing the breaking of the windows, Cary, who was across the street talking to his sister, walked towards the building. He encountered the man shooting the roman candles through the broken windows. Id. Within approximately two minutes after Cary heard the windows break, an unidentified woman came up to him, handed him a flag and told him to light it. Tr. at 146. Instead of taking steps to calm the crowd or call the police, Tr. at 143, Cary lit the flag. Cary, the unidentified woman and two others held the flag as it burned. Government Exhibit No. 4. Cary then threw the burning flag into an alcove of the Recruitment Center. Id. Fearing the flames might ignite the building,[14] several unidentified persons rushed to the building to put out the fire. Id.

After the flag burning, the police received a description of the individual who had set the flag on fire. One-half hour later, the Minneapolis Police Department arrested Cary and questioned him on a charge of arson. Tr. at 80, 82–83. He was released three days later on Monday, March 21, 1988, and the arson charges were dropped. Tr. at 82–83. The woman who helped Cary burn the flag was not arrested because the police were unable to identify her despite a public appeal. Tr. at 84. There is no evidence in the record that

---

10. One burning took place at 5:15 p.m. in front of a frozen yogurt shop. A second took place at 5:45 p.m. in the same general area. A third took place while the demonstrators walked to the Recruitment Center. A fourth took place at the Recruitment Center right before the group arrived. A fifth took place as some demonstrators marched back to the intersection of Lake and Hennepin. Lisa Cary did not observe Cary burn the flag. Cary's flag burning was the sixth and final noted in the record.

11. Tr. at 139; Government Exhibit No. 4 (video).

12. According to the testimony of Minneapolis Police Officer John Carter who was one-quarter block from the Recruitment Center, the events portrayed in the video tape were a fair and

accurate representation of the events as they occurred. Tr. at 52, 54.

13. During a March 21, 1988 interview with Virgil Carlson, a Minneapolis fireman of the Arson Division, Cary stated that he did "not necessarily believe the demonstration as a whole was nonviolent." Tr. at 66–67. Assistant U.S. Attorney Thor Anderson, in his closing argument, referred to the destructive acts as vandalism. Tr. at 175.

14. As the flag burned in the alcove, one person yelled, "Evacuate the building." Another yelled that "[t]here are people living in the building." Government Exhibit No. 4.

the individuals whose violent conduct led Cary to conclude the situation was dangerous were arrested.

A few days after his release, Cary was arrested for violation of 18 U.S.C. § 700 after admitting his participation in the flag burning. On July 25, 1988, during a pretrial motion hearing, Cary moved to dismiss the indictment on the basis that the federal statute was unconstitutional. The district court denied this motion. After the government rested on August 22, 1988, Cary moved for a judgment of acquittal on the basis that the federal statute was unconstitutional. The district court also denied this motion. Nearly one year later, on June 21, 1989, the Supreme Court decided *Texas v. Johnson,* holding that the Texas flag desecration statute as applied was unconstitutional. Because the cases are distinguishable, we find *Texas v. Johnson* not to be controlling and we affirm on other grounds the district court's finding of constitutionality. Therefore, we affirm Cary's conviction.

## II.

Cary was convicted of knowingly casting contempt upon the flag of the United States by publicly burning it in violation of 18 U.S.C. § 700. In order to determine whether or not this federal statute is constitutional as applied, we must first determine whether Cary's burning of the flag constituted expressive conduct, thereby invoking the First Amendment. *See Texas v. Johnson,* 109 S.Ct. at 2538. Second, if Cary's burning of the flag constituted expressive conduct, we must decide whether the government's interest is related to the suppression of expression. *See id.; United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). If the interest is not related to expression, then we evaluate the federal government's actions under the *O'Brien* standard which is designed for "regulations of noncommunicative conduct." *See Texas v. Johnson,*

109 S.Ct. at 2538. If the government's interest is related to expression, then we must determine whether it can pass a far more demanding standard of scrutiny. *Id.*

### A.

■ In order to determine whether Cary's flag burning constituted expressive conduct, we must inquire whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Spence v. Washington,* 418 U.S. 405, 410–11, 94 S.Ct. 2727, 2730–31, 41 L.Ed.2d 842 (1974) (per curiam). Cary burned an American flag as part of a political demonstration against the government's decision to send American troops to Honduras. The nature of Cary's action was both expressive and political. Cary's conduct demonstrated an intent to convey his disagreement with American foreign policy in Central America. His actions were understood by those who viewed it as being in furtherance of that belief. Therefore, we hold that Cary's conduct was " 'sufficiently imbued with elements of communication' ... to implicate the First Amendment." *See Texas v. Johnson,* 109 S.Ct. at 2540 (dictum) (quoting *Spence v. Washington,* 418 U.S. at 409, 94 S.Ct. at 2730).

### B.

In order to determine whether *O'Brien's* relatively lenient standard should apply to evaluate the government's punishment of Cary's conduct, we must identify the government interest at stake and then determine whether it is unrelated to the suppression of expression. *See id.* 109 S.Ct. at 2540. Two governmental interests are offered in this case to justify the conviction of Cary, just as Texas offered to support its conviction of Johnson: (1) preserving the flag as a symbol of national unity; and (2) preventing breaches of the peace.[15]

---

15. This case was argued after the decision in *Texas v. Johnson,* where the breach of peace interest was discussed in detail. In the oral argument on this case the government pointed

to its interest in preventing breaches of the peace which might arise out of the act of physical destruction of the flag. Although the district court did not mention the breach of peace inter-

*Texas v. Johnson* controls the government's assertion of the first interest as a matter of law. Suppression of Cary's expressive conduct pursuant thereto " 'is directly related to expression,' " precluding application of *O'Brien*'s more lenient standard. *See id.* 109 S.Ct. at 2542 (quoting *Spence v. Washington*, 418 U.S. at 414 n. 8, 94 S.Ct. at 2732 n. 8). As in *Texas v. Johnson*, this interest is not sufficient to justify Cary's conviction under the heightened standard of scrutiny. *See Texas v. Johnson*, 109 S.Ct. at 2548.

■ However, unlike *Texas v. Johnson*, the government's interest in preventing breaches of the peace is implicated by the facts in this case. Cary inserted himself into a concededly violent situation. Windows were being broken. People were yelling. Roman candles were being shot into the Recruitment Center. As these events transpired, Cary walked into the fray. Within approximately two minutes after the violence first erupted, he and an unidentified woman burned an American flag. Because of the ongoing violence, there was an immediate threat that the burning would encourage the violence to continue.[16] The situation in *Texas v. Johnson* was far different. In that case, the Court noted that "no disturbance of the peace actually occurred or threatened to occur because of Johnson's burning of the flag." [17] *Texas v. Johnson*, 109 S.Ct. at 2541.

### C.

■ Even though the government's interest in protecting against breaches of the peace is implicated on these facts, we apply *O'Brien* only if that interest is unrelated to Cary's expression. If the interest is related to his expression, we must apply a more exacting standard of review. We hold that the federal government's interest in protecting against breaches of the peace, on these facts, is unrelated to the suppression of expression.[18]

est in upholding the constitutionality of § 700, we will assume that it is an interest. *See Monroe v. State Court of Fulton County*, 739 F.2d 568, 573 & n. 5 (11th Cir.1984) (although Georgia Supreme Court did not mention breach of peace interest in affirming conviction for flag misuse, Eleventh Circuit assumed breach of peace to be Georgia state interest); *cf. Street v. New York*, 394 U.S. 576, 590–91, 89 S.Ct. 1354, 1364–65, 22 L.Ed.2d 572 (1969) ("We can think of four governmental interests which might conceivably have been furthered by punishing appellant for his words[.]").

16. This conclusion is unaffected by the fact that there is no evidence in the record that violence actually followed the flag burning. It is sufficient that Cary interjected himself into an atmosphere of violence creating an immediate threat that the burning would encourage the violence to continue.

17. While there is some evidence in *Texas v. Johnson* that the demonstrators spray-painted the walls of buildings and overturned potted plants, *see Texas v. Johnson*, 109 S.Ct. at 2536, there is no indication Johnson, like Cary, interjected himself directly into a violent situation in order to burn the flag.

In arguing a breach of peace interest, it is not crucial that Cary was charged with violating the flag desecration statute and not with a breach of peace statute. The courts have consistently allowed parties to argue a breach of peace interest arising out of a flag desecration statute. *See Goguen v. Smith*, 471 F.2d 88, 90 n. 2, 102 (1st

Cir.1972) (within the constitutional power of state to punish flag desecration which presents some immediate threat of breach of peace; Massachusetts statute providing: "[w]hoever publicly mutilates, tramples upon, defaces or treats contemptuously the flag of the United States ... shall be punished by a fine ...," furthers that "substantial and important governmental" breach of peace interest); *cf. Texas v. Johnson*, —— U.S. ——, 109 S.Ct. 2533, 2541–42, 105 L.Ed.2d 342 (1989) (although breach of peace interest rejected because no disturbance of the peace actually occurred or threatened to occur, court implied on different facts interest could arise from desecration statute); *Spence v. Washington*, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (per curiam) (breach of peace interest of flag misuse statute rejected *only because* no factual evidence of appellants' purpose to stimulate a public demonstration, of any gathering crowd, of any attempt by appellant to attract attention beyond hanging the flag outside his window and because no evidence that anyone but officers observed the flag).

18. On October 28, 1989, after oral argument on this case, Congress amended 18 U.S.C. § 700 to read as follows:

(a)(1) Whoever knowingly mutilates, defaces, physically defiles, burns, maintains on the floor or ground, or tramples upon any flag of the United States shall be fined under this title or imprisoned for not more than one year, or both.

(2) This subsection does not prohibit any conduct consisting of the disposal of a flag when it has become worn or soiled.

Cary intended to convey his disagreement with the United States Government's decision to send 3,200 troops to Honduras. His means of communicating that message was the burning of the American flag. The government's interest in punishing Cary's violation of § 700 was to prevent further breaches of the peace which would likely result from the reaction of the vandals to Cary's means of communicating his message in the context of violence, not to the message itself. Cary's punishment is akin to a time, place and manner restriction, and not to a content-based restriction. Therefore, *O'Brien* is the appropriate standard. *See id.* 109 S.Ct. at 2540–41. Several additional factors support this conclusion.

First, the concerns raised by the Court in *Texas v. Johnson* that punishing Johnson's flag burning would cut off public debate are not present here. In order to convict Johnson under the Texas statute, the state had to demonstrate that he intentionally and knowingly desecrated the flag. Tex. Penal Code Ann. § 42.09 (1989). The statute defines "desecrate" to mean "physically mistreat in a way that the actor knows will *seriously offend one or more persons likely to observe or discover his action."* *Id.* (emphasis added). In fact, the government presented several witnesses at Johnson's trial to testify that they had been seriously offended by Johnson's burning of the flag. *Texas v. Johnson,* 109 S.Ct. at 2541. The Court noted that Johnson "was prosecuted because he knew that his politically charged expression would cause 'serious offense.'" *Id.* at 2543. Therefore, Johnson's conviction depended on "the likely communicative impact of his expressive conduct." *Id.*

It was the suppression of Johnson's expressive conduct *because it may have offended others* which disturbed the Court in *Texas v. Johnson.* The Court also noted:

The State's position, therefore, amounts to a claim that an audience that takes serious offense at particular expression is necessarily likely to disturb the peace and that the expression may be prohibited on this basis. Our precedents do not countenance such a presumption. On the contrary, they recognize that a principal 'function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.' It would be odd indeed to conclude *both* that 'if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection,' *and* that the Govern-

---

(b) As used in this section, the term "flag of the United States" means any flag of the United States, or any part thereof, made of any substance, of any size, in a form that is commonly displayed.
The Flag Protection Act of 1989, Pub.L. No. 101–131, 103 Stat. 777 (1989).
The motivation of the Congress in passing the Flag Protection Act of 1989 is not helpful in ascertaining the intent of the 90th Congress which passed the statute at issue in this appeal. The views of a subsequent Congress "at best ... 'form a hazardous basis for inferring the intent of an earlier one.'" *South Carolina v. Regan,* 465 U.S. 367, 379 n. 17, 104 S.Ct. 1107, 1114–15 n. 17, 79 L.Ed.2d 372 (1984) (quoting *Consumer Product Safety Commission v. GTE Sylvania,* 447 U.S. 102, 117, 100 S.Ct. 2051, 2060, 64 L.Ed.2d 766 (1980)). This conclusion carries even greater weight because the 90th Congress' intent is unmistakably clear.
In enacting 18 U.S.C. § 700, Congress did not intend to prohibit speech but only the physical act of destruction. Senate Report No. 1287 states:

The Committee believes that H.R. 10480 will successfully withstand all constitutional challenges to which it may be subjected in the courts. *The bill does not prohibit speech, the communication of ideas, or political dissent or protest.* The bill does not prescribe orthodox conduct or require affirmative action. The bill does prohibit public acts of physical dishonor or destruction of the flag of the United States. The language of the bill prohibits intentional, willful, not accidental or inadvertent public physical acts of desecration of the flag. Utterances are not proscribed. Specific examples of prohibited conduct under the bill would include casting contempt upon the flag by burning or tearing it and by spitting upon or otherwise dirtying it. There is nothing vague or uncertain about the terms used in the bill.
Sen.Rep. No. 1287, 90th Cong., 2d Sess. 2, *reprinted in* 1968 U.S.Code Cong. and Admin. News. 2507, 2509 (1968) (emphasis added).

ment may ban the expression of certain disagreeable ideas on the unsupported presumption that their very disagreeableness will provoke violence.

See *Texas v. Johnson*, 109 S.Ct. at 2541–42 (emphasis in original) (citations omitted).

These concerns are not implicated by Cary's conviction. His conviction was based upon a federal statute which, unlike its Texas counterpart, does not require as an element of the crime that his expressive conduct offend third parties. Furthermore, there is no evidence in the record that anyone on the scene was even offended by Cary's actions or his message. Therefore, the government's interest in protecting against a continuing breach of peace on these facts is not related to suppressing debate or disputes between opponents nor does it offend the First Amendment's high purpose of inducing "a condition of unrest, creat[ing] dissatisfaction with conditions as they are, or even stir[ring] people to anger." *Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949).

The government's punishment of Cary for flag burning was directly related to protecting against violence on the part of vandals who would likely be spurred on by Cary's means of expression, the burning of an object—the flag—in a context of violence and his throwing the burning flag in the alcove of the government building.[19] The punishment was not related to the likely communicative impact of Cary's expressive conduct but to the time, place, and manner in which Cary chose to act.

Second, the Supreme Court noted in *Texas v. Johnson* that because the interests of the state in protecting the flag as a national symbol "blossom *only* when a person's treatment of the flag communicates some message," that interest is related to the suppression of expression. *Texas v. Johnson*, 109 S.Ct. at 2542 (emphasis added). The federal government's interest in this case, however, does not blossom *only* when a person's treatment of the flag communicates some message. They also arise when the burning is a simple act of vandalism. In this case the interest arose when violence erupted and Cary interjected himself into the violence by burning the flag and throwing it into the alcove of the Recruitment Center. The violence and likelihood of continued violence did not stem from onlookers being offended by the content of Cary's speech. Instead, the risk of further violence stemmed from the vandals and onlookers viewing a burning object—the flag—and resorting to further violence for "fun." Tr. at 126. Therefore, as applied to the facts of this case, the federal government's interest in prosecuting Cary for casting contempt on the flag by burning it in public is not related to the suppression of expression but finds additional basis in protection against violence. Suppression of the expressive element was only inciden-

---

**19.** Even in a circumstance where the government seeks to vindicate its interest in preventing breaches of the peace by punishing a flag burner because his conduct might seriously offend others, the Supreme Court has noted that arguing the state's interest is related to the suppression of free expression may overread *Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988), insofar as the argument "suggests that a desire to prevent a violent audience reaction is 'related to expression' in the same way that a desire to prevent an audience from being offended is 'related to expression.'" *Texas v. Johnson*, 109 S.Ct. at 2541 n. 4 (dictum). Because Cary's conviction does not depend upon offending the public, the federal government has an even stronger argument than Texas had for why its breach of peace interest is unrelated to the suppression of expression.

In *Monroe v. State Court of Fulton County*, 739 F.2d 568 (11th Cir.1984), the Eleventh Circuit held that as applied to the facts, the interest in preventing breaches of the peace was related to the suppression of expression. *Id.* at 573. Although the Supreme Court does not appear to accept this conclusion, *see Texas v. Johnson*, 109 S.Ct. at 2541 n. 4 (dictum), the Eleventh Circuit's holding is nonetheless not inconsistent with our holding that as applied to the facts in this case, the federal government's interest is unrelated to the suppression of speech. *Monroe* involved a threatened breach resulting from a hostile audience reaction. *Id.* at 575. The government is justified in seeking to punish the flag burning in this case not because of the effect of Cary's message protesting United States Government involvement in Honduras, but because of the effect of introducing a burning object—the flag—into a violent situation. As applied to these facts, therefore, the government's interest is related to the noncommunicative element of Cary's conduct. This conclusion does not conflict with the Eleventh Circuit's reasoning.

tal to the government's punishment of the communicative portion of Cary's conduct because the breach of peace interest exists independent of whether the flag burning communicated some message. Therefore, the conviction can be upheld if the government can meet the *O'Brien* test.[20] *See also Goguen v. Smith*, 471 F.2d 88, 103 (1st Cir.1972) (breach of peace interest under Massachusetts statute which punishes an individual for publicly treating contemptuously the flag of the United States sufficiently unrelated to suppression of First Amendment rights so as to satisfy third element of *O'Brien* test).

### D.

In *O'Brien*, the Supreme Court noted that when speech and nonspeech elements are intertwined, "a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien*, 391 U.S. at 376, 88 S.Ct. 1678. Therefore, the government's regulation of Cary's First Amendment rights can be sufficiently justified if: (1) it is within the constitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression;[21] and (4) the incidental restriction on alleged First Amendment freedoms is no greater than necessary to promote the interest. *Id.* at 377, 88 S.Ct. at 1679.

First, it is within the constitutional power of government to punish conduct which poses an imminent threat of continuing an ongoing breach of peace. *See Cantwell v. Connecticut*, 310 U.S. 296, 304, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940); *Goguen v. Smith*, 471 F.2d 88, 102 (1st Cir. 1972); *Grand Faloon Tavern, Inc. v. Wicker*, 670 F.2d 943, 949 (11th Cir.1982).

**20.** Because the government's interest is unrelated to expression, we need not apply the incitement to imminent lawless action test of *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969). Instead, we apply *O'Brien*'s more lenient standard. *See Goguen v. Smith*, 471 F.2d 88, 103 (1st Cir.1972) (since breach of peace interest unrelated to suppression of expression, *O'Brien* test applies); *cf. Monroe v. State Court of Fulton County*, 739 F.2d at 575 (as applied to facts, breach of peace interest related to suppression of expression; state must introduce objective evidence that demonstrates the imminence of public unrest or a clear and present danger of breach of peace). The *Texas v. Johnson* Court stated that where the suppression is unrelated to expression, the more lenient *O'Brien* standard must be applied. *Texas v. Johnson*, 109 S.Ct. at 2538. The Court in *dictum* later noted that "we have not permitted the Government to assume that every expression of a provocative idea will incite a riot, but have instead required careful consideration of the actual circumstances surrounding such expression, asking whether the expression 'is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.'" *Id.* at 2542 (dictum) (quoting *Brandenburg v. Ohio*, 395 U.S. at 447, 89 S.Ct. at 1829). The Supreme Court's *dictum* appears to be directed at a circumstance where the suppression is related to expression. On the facts of this case, the government's regulation is unrelated to Cary's expression, but related to his conduct. Therefore, *O'Brien* and not *Brandenburg* is appropriate. Finally, the more lenient

*O'Brien* test would become mere surplusage if the government also had to meet the much stricter standard of *Brandenburg*.

Even if the *Brandenburg* incitement to imminent lawless action test were applied, however, we note that the government's interest as applied in this case would likely be upheld. This is not a case involving a minor breach of the peace as in *Monroe v. State Court of Fulton County*, 739 F.2d at 575. In *Monroe*, one annoyed spectator struggled with Monroe for control of the flag. Such a breach, the court held, was not sufficient to meet the *Brandenburg* test. *Id.* In the instant case, the violence was dangerous and ongoing; Cary intervened, burned a flag and threw the burning flag into the alcove of the federal building. Such actions in that context are likely to incite vandals to further imminent lawless actions and as such may be punished. *See Brandenburg v. Ohio*, 395 U.S. at 447, 89 S.Ct. at 1829; *cf. Monroe v. State Court of Fulton County*, 739 F.2d at 575.

**21.** *See* discussion *supra*, at 915–918, regarding the third prong of the *O'Brien* test (government's interest in punishing Cary's violation of § 700 was to prevent further breaches of the peace which would likely result from the reaction of vandals to Cary's means of communicating his message in the context of violence, not to the message itself; Cary's punishment is akin to a time, place and manner restriction and not to a context-based restriction; concerns raised by Court in *Texas v. Johnson* that punishing Johnson for flag burning would cut off public debate are not present here).

Second, suppression of Cary's conduct furthers an important and substantial interest in protecting against further breaches of the peace. *See Goguen v. Smith,* 471 F.2d at 102; *cf. United States v. Spilotro,* 786 F.2d 808, 817 (8th Cir.1986) (effective administration of justice is a compelling interest). Cary's flag burning actions occurred in a context of violence. Protesters were breaking the windows of the Recruitment Center. People were yelling. A man then began shooting roman candles into the building. Approximately two minutes after the breaking of the first window, Cary began to burn the flag. After lighting the flag and holding it, Cary threw it into the alcove of the Recruitment Center. His actions led several persons to take action to put out the flames so the building would not catch on fire. In such a situation, the government's interest in punishing breaches of the peace and activity which is likely to cause a continuation of the breach is both substantial and important.

Finally, punishing Cary's flag burning is no greater a restriction than necessary to further the interest in preventing breaches of the peace. Because it was Cary's burning of the flag in the context of violence that threatened to provoke further violence, punishing Cary for burning the flag was necessary to promote the government's interest. Furthermore, the state's regulation is narrowly tailored. The government did not punish Cary for burning a flag in a place and time remote from violence. Instead, the government directed its regulation at flag burning in the context of ongoing and contemporaneous violence. Applying a statute punishing Cary's conduct in that context does not go beyond what is essential to promote the government's interest of protecting against a breach of the peace.[22]

### III.

Our holding rests squarely on the facts of this case. This is not a case involving a conviction for engaging in speech. This is not a case involving a violent protest during which a protester burns a flag at a point remote in time and place from the violence. This is not a case where the violence threatened is from a heated disagreement with the content of Cary's communication. Finally, this is not a case where the violence threatened is from supporters who respond to the content of his communication protesting United States involvement in Honduras. The facts are critical to our holding. This is a case about a person who voluntarily placed himself into a violent situation,[23] knowingly cast contempt on the flag by publicly burning it and threw the burning flag into the alcove of a federal building, forcing others to rush over and put out the flames so that the building would not catch on fire. Under these circumstances, we hold that the government's punishment of Cary passes *O'Brien's* more lenient scrutiny. Therefore, the federal government's interest in preventing breaches of the peace directed at and in front of its Recruitment Center justifies Cary's conviction for knowingly casting contempt on the flag.

We affirm Cary's conviction.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. In my opinion, this case is controlled by the Supreme Court's decision in *Texas v. Johnson,* —— U.S. ——, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). The first amendment prohibits the government from criminally punishing appellant for burning the flag of the United

---

**22.** Although the First Circuit in *Goguen v. Smith* stated that Massachusetts' statute was not narrowly drawn because it imposed burdens greater than essential to the furtherance of its interest of preventing breaches of the peace, we do not arrive at the same conclusion in this case. *Goguen* involved a facial attack on the state flag burning statute. Although we do not pass on the propriety of the First Circuit's finding that the state statute was unconstitutional on its face, we note that the court's conclusion that the

statute was overbroad was an outcome of its facial analysis. Cary attacks the federal statute as applied. The court's narrowly-tailored analysis in *Goguen,* therefore, is not instructive because of Cary's strategy and the facts of the case.

**23.** Cary testified the vandals were destroying government property to have "fun" and just "so that they could break something." Tr. at 126.

States as a means of political protest. Accordingly, I would reverse the judgment of the district court.

## EXPRESSIVE CONDUCT

As noted by the majority opinion, appellant's burning of the flag constituted expressive conduct that implicates the first amendment. Majority opinion at 913–914 (Part IIA). As in *Texas v. Johnson*, "[t]he expressive, overtly political nature of this conduct was both intentional and overwhelmingly apparent." 109 S.Ct. at 2540. Appellant intended to convey a particularized message, specifically, his opposition to the United States' continued military involvement in Honduras, and, given the timing of appellant's conduct and the context in which it occurred, the likelihood was great that this message would be understood by those who viewed it.

## FACIALLY UNCONSTITUTIONAL

I would hold that 18 U.S.C. § 700 is unconstitutional on its face. First, although the government can restrict expressive conduct more than it can written or spoken words, "[i]t may not ... proscribe particular conduct *because* it has expressive elements." *Texas v. Johnson*, 109 S.Ct. at 2540 (emphasis in original). That is precisely what this statute does—it prohibits certain conduct because of its negative, critical message. As eloquently stated by Judge Browning in his dissenting opinion in *United States v. Crosson*, 462 F.2d 96, 108 (9th Cir.) (footnote omitted), *cert. denied*, 409 U.S. 1064, 93 S.Ct. 569, 34 L.Ed.2d 517 (1972),

> [Title] 18 U.S.C. § 700 does not simply prohibit the burning of a flag. It punishes one who "knowingly casts contempt" upon a flag, by various means, including burning. The burning of a flag is not inherently contemptuous, *see, e.g.*, 36 U.S.C. § 176[ (k) (authorizing destruction of the flag "in a dignified way, preferably by burning") ]; and by its terms the statute punishes only flag burning that expresses contempt. Flag burning that is not communicative is not prohibited, nor, for that matter, is flag burning or other conduct that expresses loyalty and respect. The statute does not prohibit

the private destruction of a flag even if done to express contempt. The conduct is punished only if done "publicly," that is, under such circumstances that the contempt expressed by the conduct may be communicated to another.

*Cf. Stromberg v. California*, 283 U.S. 359, 361, 51 S.Ct. 532, 533, 75 L.Ed. 1117 (1931) (state statute prohibiting display of red flag in a public place "as a sign, symbol or emblem of opposition to organized government" held unconstitutional).

Second, this statute is not neutral with respect to viewpoint. This statute prohibits specific conduct only when that conduct expresses a particular point of view, that is, a point of view that the government, or society, considers offensive, disagreeable or disrespectful of the flag. Moreover, another statute recommends destruction of a flag by burning. Title 36 U.S.C. § 176(k) provides that a flag, "when it is in such condition that it is no longer a fitting emblem for display, should be destroyed in a dignified way, preferably by burning." Each statute addresses the same conduct— burning the flag. What differentiates the criminal act from the authorized act is the message or idea associated with each. Defiance is prohibited; respect is authorized. The fact that only the public display of contemptuous conduct is prohibited emphasizes the importance of its communicative impact. The government cannot consistent with the first amendment "ensure that a symbol be used to express only one view of that symbol or its referents." *Texas v. Johnson*, 109 S.Ct. at 2546; *see United States v. Crosson*, 462 F.2d at 108 n. 7 (Browning, J., dissenting), *citing Schacht v. United States*, 398 U.S. 58, 63, 90 S.Ct. 1555, 1559, 26 L.Ed.2d 44 (1970) (government cannot authorize persons not on active duty to wear a military uniform as an actor portraying a member of the armed forces only if the portrayal does not tend to discredit that armed force). *Cf. Boos v. Barry*, 485 U.S. 312, 319, 108 S.Ct. 1157, 1165, 99 L.Ed.2d 333 (1988) (content neutrality).

## REGULATION OF EXPRESSION

Although 18 U.S.C. § 700 is unconstitutional for the reasons discussed above, this

statute is also unconstitutional under either the relatively lenient test set forth in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (*O'Brien*), which, in my view, does not apply here, or the more demanding test set forth in *Spence v. Washington*, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974), which I think does apply.

In *O'Brien*, the defendant was convicted of knowingly destroying his selective service registration certificate in violation of 50 U.S.C. App. § 462(b). That provision prohibited the knowing destruction of the certificates, did not distinguish between public and private destruction, and did not punish destruction engaged in only for the purpose of expressing views. 391 U.S. at 375, 88 S.Ct. at 1678. The Court held that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *Id.* at 376, 88 S.Ct. at 1678–79. However, the Court limited this test to those cases in which "the governmental interest is unrelated to the suppression of free expression." *Id.* at 377, 88 S.Ct. at 1679. The Court upheld O'Brien's conviction because he was not punished for his expressive conduct, that is, for protesting against the Vietnam War, but for the noncommunicative impact of his conduct, that is, for frustrating the smooth and efficient functioning of the selective service system. *Id.* at 382, 88 S.Ct. at 1681. The Court thus distinguished *O'Brien* from a case in which "the alleged governmental interest in regulating conduct arises in some measure because the communication allegedly integral to the conduct is itself thought to be harmful." *Id.* at 382, 88 S.Ct. at 1681, *citing Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532.

In order to decide whether the more lenient *O'Brien* test applies here, we must decide whether the government has asserted an interest in support of appellant's conviction that is unrelated to the suppression of free expression. At trial and in its initial brief on appeal, the government as-serted its interest in preserving the flag as a symbol of nationhood and national unity to justify appellant's conviction. After *Texas v. Johnson*, the federal government can no longer rely on this interest. "Since the national interest in patriotism, loyalty, and unity does not warrant censorship of contemptuous and disrespectful views directed against the government itself, it can hardly justify censorship of such views when directed against the mere symbol of government." *United States v. Crosson*, 462 F.2d at 110 (Browning, J., dissenting) (federal government); *cf. Texas v. Johnson*, 109 S.Ct. at 2542–48 (rejecting state's interest in preserving the flag as a symbol of nationhood and national unity). The government now claims that its interest in preventing breaches of the peace justifies appellant's conviction.

In my view, *O'Brien* does not apply here because the governmental interest in regulating conduct is not unconnected to the suppression of free expression. Here, the governmental interest in preventing breaches of the peace arises precisely "because the communication allegedly integral to the conduct is itself thought to be harmful." *O'Brien*, 391 U.S. at 382, 88 S.Ct. at 1682. Because 18 U.S.C. § 700 is aimed at suppressing communication, it cannot be sustained as a regulation of noncommunicative conduct. *Id., citing NLRB v. Fruit & Vegetable Packers Union*, 377 U.S. 58, 79, 84 S.Ct. 1063, 1074, 12 L.Ed.2d 129 (1964) (Black, J., concurring). To paraphrase Professor Nimmer,

> it is precisely the particular idea conveyed by the act of [burning the flag] that it is feared will lead to a violent or unlawful reaction. Thus, insofar as the governmental objective is the suppression of the communication of an idea in order to avoid resulting violence, it is an anti-speech interest, *i.e.*, an interest in the suppression of speech.

Nimmer, *The Meaning of Symbolic Speech Under the First Amendment*, 21 UCLA L.Rev. 29, 53–54 (1973) (footnotes omitted), *cited in Monroe v. State Court*, 739 F.2d 568, 574 (11th Cir.1984). *But cf. Texas v. Johnson*, 109 S.Ct. at 2541 n. 4 (suggesting

that desire to prevent a violent audience reaction is not necessarily "related to expression" in the same way that a desire to prevent an audience from being offended is "related to expression").

Even assuming for purposes of analysis that the governmental interest in preventing breaches of the peace is unrelated to the suppression of free expression, the governmental interest in preventing breaches of the peace is not implicated on these facts. Unlike the states, the *federal* government does not possess the police power to prevent breaches of the peace, at least not on the public sidewalks and public streets of the city of Minneapolis where this demonstration occurred. *See United States v. Crosson*, 462 F.2d at 110 & n. 11 (Browning, J., dissenting) (citing cases). The federal government could have prosecuted appellant for attempted destruction of property of the United States (the recruitment center, not the flag, which was private property), in violation of 18 U.S.C. § 1361, or, assuming the recruitment center is military property or property within the special territorial jurisdiction of the United States, arson of military property in violation of 18 U.S.C. § 81, or malicious injury or destruction of property in violation of 18 U.S.C. § 1363. Had the federal government prosecuted appellant for these or similar offenses, the federal government's interest in protecting its property would have been unrelated to the suppression of expression.

Unlike the federal government, the *state* does have an interest in preventing breaches of the peace and could have prosecuted appellant for disorderly conduct, breach of the peace, participating in a riot, or even vandalism. *See, e.g., Monroe v. State Court*, 739 F.2d at 575. The state's interest in preventing breaches of the peace would have been unrelated to the suppression of expression. Despite the emphasis of the government and the majority opinion on the disorderly and disruptive nature of the demonstration, appellant was not immediately arrested or charged with any breach-of-the-peace type offense by the local authorities on the basis of his conduct. Local police officers were present during the demonstration. Appellant was later arrested and charged with arson by the local authorities, but that charge was subsequently dropped.

IMMINENT LAWLESS ACTION

The applicable test is the demanding standard set forth in *Spence v. Washington*, 418 U.S. 405, 94 S.Ct. 2727—whether the government's interest in preventing breaches of the peace is so substantial as to justify infringement of appellant's first amendment rights. Assuming for purposes of analysis that the federal government has a valid interest in preventing breaches of the peace, the government cannot suppress expression in order to keep the peace unless it can show that the expression, or expressive conduct, "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969) (footnote omitted) (Ku Klux Klan speech). This is because "a principal 'function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.'" *Texas v. Johnson*, 109 S.Ct. at 2541, *citing Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949) (speech condemning various political and racial groups).

I have reviewed the record in the present case, including the videotape of the demonstration, and I cannot conclude that the government established either that appellant burned the flag in order to incite imminent lawless action or that a breach of the peace was a likely reaction to appellant's conduct. In fact, the lawless and violent acts that did occur in connection with the demonstration, the breaking of the windows of the recruitment center and the shooting of fireworks through the broken windows, occurred several minutes before appellant burned the flag. Appellant's burning of the flag apparently signalled the end of the demonstration. No imminent lawless action occurred as a result of

or in reaction to appellant's expressive conduct.

Finally, it makes no difference for first amendment analysis that appellant could have expressed his views just as effectively in a different manner, that is, by means other than burning the flag. *Texas v. Johnson*, 109 S.Ct. at 2546 n. 11, *citing Spence v. Washington*, 418 U.S. at 411 n. 4, 94 S.Ct. at 2731 n. 4. This statute cannot be upheld as a time, place and manner regulation.

Because I would hold that appellant's conviction is not consistent with the first amendment, I would reverse the judgment of the district court.