STATE of Minnesota, Respondent,

v.

Thomas Eugene MARINARO,
Appellant.

No. A08–0972.

Court of Appeals of Minnesota.

July 14, 2009.

Lori Swanson, Attorney General, St. Paul, MN; and Michael K. Kearney, Colosimo, Patchin, Kearney & Brunfelt, Ltd., Virginia, MN, for respondent.

Mark W. Benjamin, Criminal Defense, P.A., Cambridge, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge; CONNOLLY, Judge; and JOHNSON, Judge.

## OPINION

JOHNSON, Judge.

The Minnesota Clean Indoor Air Act prohibits smoking in numerous indoor public places, including bars and restaurants. But the act makes an exception for actors and actresses while they are engaged in theatrical performances. Thomas Eugene Marinaro, the proprietor of Tank's Bar in the city of Babbitt, sought to invoke that exception by organizing an event at which participants smoked cigarettes in his bar. Police officers visited the bar on March 14, 2008, and issued Marinaro a citation for violating the act. After a bench trial, the district court found Marinaro guilty of a petty misdemeanor. On appeal, Marinaro argues that the evidence is insufficient because his customers' smoking was within the theatrical-performance exception to the act. We conclude that the district court did not clearly err in its findings of fact and did not err in its interpretation of the act and, therefore, affirm.

## FACTS

On March 14, 2008, the Babbitt Police Department conducted an investigation of reports of unlawful smoking at Tank's Bar after receiving complaints. Police Chief Terrance Switajewski sent Officer Trevor Lionberger to the bar in plain clothes to investigate. Officer Lionberger arrived at the bar at approximately 1:00 p.m. He saw a sign on the door stating that a theatrical performance of Gun SMOKE Monologues would occur every day, beginning at 3:00 p.m. and continuing until closing time. The sign described Gun SMOKE Monologues as a "Theatrical Performance and Satire Regarding the Minnesota Legislature and the Freedom to Breathe Act" and stated that smoking would occur during the performances. Officer Lionberger entered the bar, did not see anyone smoking, and left after a short time.

Officer Lionberger returned to the bar at approximately 2:55 p.m. After a few minutes, he saw that several customers were smoking cigarettes and wearing name tags that said, "Actor." Although the barroom includes a stage, none of the smokers was on the stage. Officer Lionberger did not see any indicia of a typical theatrical performance. Officer Lionberger testified that the customers wearing "Actor" name tags appeared to behave no differently than bar customers ordinarily behave except for the fact that they were smoking cigarettes.

Officer Lionberger then stepped outside and called Chief Switajewski. After arriv-

ing and observing the inside of the bar, Chief Switajewski instructed Officer Lionberger to issue a citation to a person smoking inside the bar. Officer Lionberger did so. Chief Switajewski asked a bartender to call Marinaro to request that he come to the bar. When Marinaro arrived, Chief Switajewski issued him a citation for violating Minn.Stat. § 144.417, subd. 2(a) (Supp. 2007), which makes it a petty misdemeanor for a proprietor of a business occupying a public place to allow smoking.

In May 2008, the district court conducted a bench trial. The state called two witnesses: Officer Lionberger and Chief Switajewski. Marinaro testified in his own defense and called two other witnesses: his business partner and a customer of Tank's Bar. On direct examination, Marinaro explained that he had researched the provisions of the Minnesota Clean Indoor Air Act and believed that he and his bar were in compliance with the requirements of the exception for theatrical performances. Nonetheless, the district court found Marinaro guilty of the charged offense. The district court imposed a $300 fine as Marinaro's sentence. Marinaro appeals.

## ISSUE

In light of the district court's findings of fact, did customers of Marinaro's bar engage in a "theatrical performance," as that term is used in Minnesota Statutes section 144.4167, subdivision 9 (Supp. 2007)?

## ANALYSIS

■ Marinaro argues that the district court erred by finding him guilty because the evidence is insufficient to sustain the conviction in light of the theatrical-performance exception to the Minnesota Clean Indoor Air Act. We first must establish who bears the burden of proof on that issue. As a general rule, if a fact to be proved consists of a "mitigating circum-

stance or issue [that] is the converse of an enumerated element of the crime charged and negates that element," that fact is considered a defense (or an affirmative defense, depending on terminology). *State v. Auchampach,* 540 N.W.2d 808, 816–17 & n. 7 (Minn.1995). In that event, the defendant bears the burden of producing evidence sufficient "to make the defense one of the issues of the case." *Id.* at 817. In some situations, the burden shifts back to the state to disprove the defense beyond a reasonable doubt; in other cases, the defendant also bears the burden of persuasion with respect to the defense, which requires the defendant to prove the exception by a preponderance of the evidence. *Id.* at 816–17 n. 7. A defendant bears the burden of persuasion on a defense only if, first, the conduct prohibited by the criminal offense, " 'in itself, without the exception is ordinarily dangerous to society or involves moral turpitude' " and, second, " 'requiring the state to prove the acts would place an impossible burden on the prosecution.' " *State v. Timberlake,* 744 N.W.2d 390, 397 (Minn.2008) (quoting *State v. Brechon,* 352 N.W.2d 745, 749 (Minn.1984)). The second requirement of this test is not satisfied here because it would not be "an impossible burden" to require the state to disprove the existence of a theatrical performance. Thus, the state bears the burden of persuasion on Marinaro's defense.

The Minnesota Clean Indoor Air Act was enacted in 1975. Initially and for more than three decades after its enactment, the act prohibited smoking in indoor public places except in areas designated for smoking. But in 2007, the act was amended by the Freedom to Breathe Act to impose more extensive restrictions on smoking. *See generally* 2007 Minn. Laws ch. 82. The stated purpose of the act, as amended, is "to protect employees and the general public from the hazards of second-

hand smoke by eliminating smoking in public places, places of employment, public transportation, and at public meetings." Minn.Stat. § 144.412 (Supp. 2007). Accordingly, the amended act entirely prohibits smoking in a variety of indoor locations that are open and accessible to the public, including "a public place" and "a place of employment." Minn.Stat. § 144.414, subd. 1 (Supp. 2007). The term "public place" is defined, in part, as "any enclosed, indoor area used by the general public, including ... restaurants [and] bars." Minn.Stat. § 144.413, subd. 2 (Supp. 2007). As a consequence of the 2007 amendment, bars and restaurants that previously maintained designated smoking sections now are forbidden from permitting smoking anywhere in their indoor spaces.

The act includes certain exceptions, such as exceptions for private residences, private automobiles, hotel rooms rented to guests, tobacco-products shops, and family farms. *See* Minn.Stat. § 144.4167 (Supp. 2007). At issue in this case is the exception for persons engaged in theatrical performances, which provides: "Sections 144.414 to 144.417 do not prohibit smoking by actors and actresses as part of a theatrical performance.... Notice of smoking in a performance shall be given to theater patrons in advance and shall be included in performance programs." *See* Minn.Stat. § 144.4167, subd. 9 (Supp. 2007). The term "theatrical performance" is not defined by the act.

■ Marinaro does not dispute that his bar is a "public place" under the act or that customers were smoking in the bar on March 14, 2008. Instead, he argues that he is not guilty because the smoking that occurred in his bar on the day in question was part of a theatrical performance. Marinaro contends that *Gun SMOKE Monologues* is a form of improvisational theater in which actors perform without a script.

This argument is consistent with his trial testimony, in which he said that his customers were "discussing ... our right to be able to smoke," and consistent with the district court's description of Marinaro's purpose, which was "to provide an outlet for his patrons to regain their right to smoke and ... to discuss their civil liberties and rights."

The district court made detailed written findings of fact. The district court found, "No one present indicated when the theatrical production started" and there were "no other indicators that a play or theatrical production was taking place." The district court also found that "there were no scripts or indicators setting the theatrical production apart from normal bar activity." The district court credited Chief Switajewski's testimony that "there was no one on the stage or stage area where bands would normally be." Rather, the district court found that customers of the bar "were grouped up and socializing in the normal fashion of patronizing a bar." In analyzing the evidence, the district court summarized the case as follows:

> The *Gun SMOKE Monologues* has no costumes, script, director, doesn't take place on a stage or set apart from the general bar area and according to testimony is indiscernible from the general activities taking place in Tank's Bar before the smoking ban went into effect, but for the 'Actor' name tags.

The district court cited common definitions of terms used by the legislature and reasoned that those definitions "do not seem to apply to the happenings at Tank's Bar." Accordingly, the district court concluded that the state proved "beyond a reasonable doubt that on March 14, 2008," Marinaro "did knowingly fail to comply with Minnesota Statutes sections 144.414 to 144.417 by permitting smoking to take place in his establishment." The district court suc-

cinctly described its ruling by stating, "The legislature did not intend the theatrical production exception to Minn.Stat. § 144.417 to become a blanket exception simply by having patrons in a bar put on name tags indicating the word 'Actor.'"

■ Marinaro does not argue that the district court erred in its findings of the historical facts. To succeed in such an argument would be difficult because we review factual findings for clear error, giving substantial deference to the district court's observation of the witnesses and its advantageous position from which to understand the nature of the conduct at issue. *See State v. Colvin*, 645 N.W.2d 449, 453 (Minn.2002); *see also State v. Davis*, 540 N.W.2d 88, 90 (Minn.App.1995) (noting that credibility determinations are province of district court in bench trial), *review denied* (Minn. Jan. 31, 1996). Rather, Marinaro's argument on appeal goes to the district court's ultimate conclusion that the customers of Tank's Bar on March 14, 2008, were not engaged in a "theatrical performance." That determination is informed both by the district court's understanding of the historical facts and by the district court's interpretation of the statute. On established facts, a district court's interpretation and application of a statute is a question of law, which is subject to a *de novo* standard of review. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996). In other respects, we "review criminal bench trials the same as jury trials when determining whether the evidence is sufficient to sustain convictions." *State v. Holliday*, 745 N.W.2d 556, 562 (Minn.2008). We will reverse a finding of guilt only if the district court could not reasonably conclude that the defendant is guilty of the offense charged. *See Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn.2004).

The district court concluded that no "theatrical performance" occurred on March 14, 2008, notwithstanding the labels attached by Marinaro to his customers' conduct, and notwithstanding some superficial similarities between the customers' conduct and a genuine theatrical performance. The district court's conclusion is consistent with common definitions of key words in the act. The word "performance" is defined as a "presentation before an audience," *The American Heritage College Dictionary* 1034 (4th ed. 2007), or the "execution in a set or formal manner or with technical or artistic skill," *Webster's New Int'l Dictionary* 1818 (2d ed. 1946). The word "theatrical" is defined as "[of], relating to, or suitable for dramatic performance or the theater," *The American Heritage College Dictionary* 1428 (4th ed. 2007), or pertaining to "dramatic representations," *Webster's New Int'l Dictionary* 2617 (2d ed. 1946). In light of its findings of fact, the district court did not err in its interpretation of the theatrical-performance exception to the act's smoking ban.

Marinaro contends that we should reverse the district court by following the reasoning of *Schacht v. United States*, 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970), in which the United States Supreme Court reviewed a conviction under a federal statute that prohibits the unauthorized wearing of a military uniform. *Id.* at 59, 90 S.Ct. at 1557. Because the Supreme Court reversed the conviction in that case due to a theatrical-performance exception, Marinaro contends that a district court may not hold that a self-described theatrical performance is not a theatrical performance. The statute in *Schacht* included an exception for persons "portraying a member of the Army, Navy, Air Force, or Marine Corps, [as] an actor in a theatrical or motion-picture production ... [that] does not tend to discredit that armed force." *Id.* at 59–60, 90 S.Ct. at 1557 (quotation omitted). Schacht was arrested after he participated in a sidewalk performance of a skit that was critical of

the Vietnam War. *Id.* at 59–60, 90 S.Ct. at 1557. The central issue was whether the statute was an unconstitutional restriction on Schacht's right to free speech. But the government also argued that "what these amateur actors did ... should not be treated as a 'theatrical production' within the meaning of" the statutory exception. *Id.* at 61, 90 S.Ct. at 1558. In analyzing that argument, the Supreme Court stated, "Certainly theatrical productions need not always be performed in ... a defined area such as a conventional stage. Nor need they be performed by professional actors or be heavily financed or elaborately produced." *Id.* The Court held that the performance was within the statute's theatrical-performance exception, noting that "the record shows without dispute the preparation and repeated presentation by amateur actors of a short play designed to create in the audience an understanding of an opposition to our participation in the Vietnam war." *Id.* The Court further explained

> It may be that the performances were crude and amateurish and perhaps unappealing, but the same thing can be said about many theatrical performances. We cannot believe that when Congress wrote out a special exception for theatrical productions it intended to protect only a narrow and limited category of professionally produced plays.

*Id.* at 61–62, 90 S.Ct. at 1558.

We note that *Schacht* is not binding authority in this case because it concerned a federal statute. But to the extent that *Schacht* informs our analysis, it cuts against Marinaro's argument. *Schacht* illustrates that a court *may* determine whether conduct that purports to be a theatrical performance actually is a theatrical performance. The Supreme Court appears to have evaluated whether Schacht's skit reflected traditional notions of a theatrical performance, and the Supreme Court appears to have concluded

that the skit did satisfy that test because it included a script of defined length that was recited by actors with the intent of conveying a message to an audience. *Id.* at 61–62, 90 S.Ct. at 1558. But the reasoning employed in *Schacht* does not benefit Marinaro because the facts of this case are materially different. The district court in this case did not reject *Gun SMOKE Monologues* on the ground that it lacked "preparation and repeated presentation," was not intended to convey a message to an audience, or was too "crude and amateurish." *Id.* at 61–62, 90 S.Ct. at 1558. The district court essentially determined that *Gun SMOKE Monologues* was not real but, rather, was a sham. The particular facts of this case do not present a close question because *Gun SMOKE Monologues*, in its objective manifestations, had little resemblance to a genuine theatrical performance. In addition to the reasons stated by the district court, we doubt that *Gun SMOKE Monologues* could be continuously performed from 3:00 to closing time, every day, indefinitely.

Marinaro's counsel informed the court at oral argument that Tank's Bar has suffered a sharp decline in revenues since the effective date of the 2007 amendments to the act and that Marinaro wishes to find a lawful means of invoking the theatrical-performance exception to the act. For that reason, Marinaro urges us to identify certain features of a theatrical performance that are either necessary to or sufficient for a conclusion that a theatrical performance has occurred. For example, Marinaro's counsel conceded at oral argument that a theatrical performance must, at a minimum, include an audience, but that is as much as he would concede. In *Schacht*, the Supreme Court declined to describe all scenarios that would or would not satisfy the theatrical-performance exception to the federal statute. The Supreme Court stated, "[W]e need not decide

all the questions concerning what is and what is not within the scope of [the statutory exception]. We need only find, as we emphatically do, that the street skit ... was a 'theatrical production' within the meaning of that section." *Id.* at 62, 90 S.Ct. at 1558. We likewise decline to give advisory opinions concerning hypothetical factual situations. It is neither necessary nor prudent in this case to attempt to set forth an all-purpose definition of the term "theatrical performance." It is sufficient to say that the district court did not err by concluding that *Gun SMOKE Monologues,* as portrayed by the customers of Tank's Bar on March 14, 2008, was not a "theatrical performance" in the sense in which that term is used in the act.

In his brief, Marinaro also raised several constitutional challenges to the act. At oral argument, his attorney acknowledged that those issues had not been preserved in the district court, and he expressly abandoned them. Thus, we need not consider the constitutional issues raised in Marinaro's brief.

## DECISION

The district court did not err by concluding that the conduct of the customers of Tank's Bar on the afternoon of March 14, 2008, was not within the theatrical-performance exception to the Minnesota Clean Indoor Air Act's prohibition on smoking in bars. Therefore, the district court did not err by finding Marinaro guilty of the charged offense.

**Affirmed.**